Emmett DOYLE, et al., Plaintiffs,

Mitch Vanya, Max Cantrell, George Kay, Raymond Lyons, L.D. Washington, Charles Mankey, George Simmons, Raymond Roberts, John Varner and Frank Sebesta, Plaintiffs-Appellants,

v.

UNITED STATES of America, Internal Revenue Service, Ebasco Services, Incorporated, et al., Defendants-Appellees.

No. 86–6004.

United States Court of Appeals,
Fifth Circuit.

June 2, 1987.

Michael Louis Minns, Houston, Tex., for plaintiffs-appellants.

Michael L. Paup, Chief, Roger M. Olsen, Asst. Atty. Gen., Gary R. Allen, Mary Frances Clark, Attys., Appellate Section, Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S., I.R.S. & Federal defendants-appellees.

Before WRIGHT,* GEE, and JOLLY, Circuit Judges.

GEE, Circuit Judge:

Ten plaintiffs appeal an award under Rule 11 of the full amount of the defendant's attorney's fees against each of them individually. We affirm.

Twenty-five employees of defendant Ebasco Services filed W-4 forms claiming exemptions from all income tax withholding. The Internal Revenue Service disagreed with these claims; it assessed a $500 penalty against each employee under 26 U.S.C. § 6682, and directed Ebasco to ignore their invalid W-4 forms and withhold wages.

The disgruntled employees responded with a *pro se* class-action for injunctive and declaratory relief, actual damages in the amount of $50 million, and punitive damages in the amount of $100 billion. The more intelligible of their claims are summarized in the margin.[1] The United States did not bother to answer, but simply filed a motion to dismiss or for summary judgment on various grounds, requesting attor-

ney's fees under Rule 11. The motion was unopposed. The district court granted the motion to dismiss, holding that the suit was frivolous as a matter of law. After requesting and receiving affidavits from the government attorneys claiming $1,554.88 in costs and attorney's fees, the district court entered judgment, dismissing plaintiffs claims with prejudice and assessing $1,554.88 against each plaintiff individually for his or her violation of Rule 11. Fed.R. Civ.P. 11.[2] Ten of the original twenty-five plaintiffs retained counsel and brought this appeal. They challenge only the amount of sanctions for their admitted violation of Rule 11.

 The appellants are unhappy with the way they were treated in the district court, and they complain about various aspects of the outcome. As far as we can tell, however, their appeal asks us to consider seriously only two arguments. First, appellants argue that the district court erred in awarding the amount of attorney's fees requested in the government's affidavits because the affidavits did not set out a "proper predicate" for the claimed amounts. They point out that the government attorneys did not aver that they were licensed to practice law, and they argue that this particular assertion is a necessary

---

* Circuit Judge of the Ninth Circuit, sitting by designation.

1. Plaintiffs brought an action on behalf of "all wage earners in the United States who have claimed exemption from federal income tax withholding...." They alleged that "each class member has indicated exemption from federal tax withholding ... and has sought redress as well as spoken out publicly, including in the workplace, concerning the well known GE-STAPO tactics of the IRS." The complaint asserted various causes of action arising under federal statute and the Constitution, alleging that Ebasco had forwarded their W-4 forms to the IRS as part of conspiracy; that Ebasco and the IRS had wrongfully refused to acknowledge the validity of certain documents claiming that the plaintiffs "no longer volunteer" for withholding, that they were not employees, that they were not subject to the "excise" tax on wages, that personal labor is property, that the federal income tax is voluntary, and that property, including compensation for services, is not taxable income. Plaintiffs also alleged in their complaint that the "psuedo [sic] Regulations" of the IRS concerning income tax withholding were illegal for various reasons, including that

the Regulations "operate in such a manner as to sanction, condone and encourage terrorism."

2. The pertinent part of Rule 11 reads (with our emphasis):

The signature [on a pleading, motion, or other paper] of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief *formed after reasonable inquiry* it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it ... *an appropriate sanction,* which *may* include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including *a reasonable attorney's fee.*

part of an affidavit for attorney's fees. We disagree. The district court can rely on unopposed affidavits and is not required to hold an evidentiary hearing to set attorney's fees for Rule 11 purposes. *Davis v. Veslan Enterprises*, 765 F.2d 494, 500 n. 12 (5th Cir.1985). Both affidavits state that the persons whose fees are at issue were government attorneys, and the appellants do not suggest that the government attorneys were in fact practicing law without a license. That is enough of a factual "predicate" for the district court to grant attorney's fees. Appellants also balk at the affiants' failure to aver that the attorney's fees they request are based on personal knowledge of a customary and reasonable rates; also, they complain about the lack of an explicit statement in the affidavits that the requested attorney's fees were "necessary." These omissions are asserted to be a sort of evidentiary failure—the appellants use the phrase "conclusory allegations"—that leaves the district court's award of fees "unsupported" in the record. Again, the appellants do not contend that the fees were in fact too high.[3] We find the unopposed affidavits adequate, and the amount of fees awarded by the district court within its discretion.

Second, the appellants argue that the total award of $38,872.00 in attorney's fees —$1,554.88 against each of 25 plaintiffs individually—is "unprecedented" and "dangerous." They contend that the multiplication of reasonable attorney's fees is prohibited by Rule 11, which speaks only of "reasonable expenses incurred ... including a reasonable attorney's fee." They point to the absence of case law allowing an award of attorney's fees against each person participating in a Rule 11 violation as support for their position that such an award is prohibited. The appellants do not suggest that the actual dollar amount of sanctions against each of them was so large as to be an abuse of the district court's discretion.

Each plaintiff signed the admittedly frivolous complaint; sanctions against each were clearly called for under Rule 11. *See Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1130–31 (5th Cir.1987). The type and amount of the sanction—in the words of the Rule, "an appropriate sanction"—is within the discretion of the district court. *Davis v. Veslan Enterprises*, 765 F.2d at 500–01. The rule permits but does not require that the district court award attorney's fees: "an appropriate sanction ... *may* include an order to pay the other party ... reasonable expenses incurred ... including a reasonable attorney's fee." There is absolutely no doubt that the court could have assessed an outright sanction of $1554.88 against each plaintiff without mentioning "attorney's fees" or tying the amount of the sanction to the government's costs. As noted, the appellants make no contention that such an award would be an abuse of discretion, and had they done so we would have rejected it. Therefore, the award of $1554.88 in "attorney's fees" from each plaintiff to the government must be affirmed. *See* Fed.R.Civ.P. 61 (courts "must disregard any error or defect ... which does not affect the substantial rights of the parties"); Fed.R.Civ.P. 1 (the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every action"). But all this is a negative justification of the district court's decision—an argument that the court did not err. We must say more to make our views clear.

We think the district court's decision was a wise and equitable resolution of the difficult task of setting "an appropriate sanction" for frivolous lawsuits by *pro se* litigants. Each plaintiff was required to pay back through the government to other taxpayers the cost of his frivolous behavior had he filed an individual lawsuit and not sought the psychological and financial refuge of aggregate frivolity. This solution ties the amount of Rule 11 sanctions to the appropriate standard of the opposing party's costs and attorney's fees, eliminating

---

**3.** The government requested $194.88 in costs and $1360 in attorney's fees (24 hours of attor- ney time at an average of $56 per hour).

on the one hand the risk of *overly* punitive sanctions against *pro se* litigants by harried district judges, and on the other the incentive to huddle together in mass *pro se* lawsuits in order to minimize the cost of adverse attorney's fee awards. We AFFIRM the judgment of the district court.