James C. ROBERTS, et al.

v.

CHEVRON U.S.A., INC., et al.

No. Civ. A. 86–340–B.

United States District Court,
M.D. Louisiana.

Oct. 21, 1987.

---

H. Alston Johnson, III, Baton Rouge, La., for Jerome D'Aquille.

Nathan T. Gisclair, Jr., James B. Irwin, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., James T. Jeffus, Houston, Tex., for Chevron U.S.A., Inc.

Paul H. Spaht, Knatrow, Spaht, Weaver & Blitzer, Baton Rouge, La., Leon Gary, Jr., Gary, Field, Landry, Dornier, Baton Rouge, La., for Maureen N. Harbourt, Gary A. Bezet and G. William Jarman.

POLOZOLA, District Judge.

This case presents a clear example of the need and purpose for Rule 11 of the Federal Rules of Civil Procedure. The plaintiffs, James Cleveland Roberts, Jr. and his wife have openly and flagrantly abused the judicial system by ignoring final judgments of the court, causing unnecessary delay and harassment, including scandalous, unjustified, and unsupported allegations in their pleadings, and proceeding in an improper and frivolous manner with callous disregard of the judicial system. Their actions must and shall come to an abrupt end. For reasons which follow, the court finds that the plaintiffs and their counsel have openly and flagrantly violated Rule 11. Therefore, sanctions shall be imposed on the plaintiffs and their counsel.

## I. History of Litigation

(1) The instant suit

This suit was originally filed in the Eighteenth Judicial District Court for the Parish of Pointe Coupee, State of Louisiana. The suit was timely and properly removed to this court by the defendants. Plaintiffs' motion to remand the suit to state court was denied by the court. Although plaintiffs' suit in state court alleged causes of action under the Louisiana Unfair Trade Practices Act, LA R.S. 51:1402 and article 2315 of the Louisiana Civil Code, the suit in reality seeks to have the state court review and set aside a final judgment entered by this court and affirmed by the Fifth Circuit Court of Appeals in *Gulf Oil Corp. v. J.C. Roberts Oil Co.*, CA 83–848, *aff'd*, 750 F.2d 67 (5th Cir.1984). Named as defendants in the instant suit are Chevron U.S.A.[1], Maureen N. Harbourt, Gary A. Bezet and G. William Jarman. Harbourt, Bezet and Jarman were counsel of record for Gulf Oil Corp. in CA 83–848. After setting forth background information on the Gulf Oil suit, plaintiffs set forth allegations in paragraphs 8 through 11 of the original state court petition which clearly show plaintiffs' intent to have the state court reverse the federal decision rendered by the federal courts. The Roberts then proceeded to accuse the attorneys who represented Gulf of "fraudulent conduct in .withholding evidence."[2] In their damage claim, the Roberts sought $675,000 "to satisfy the fraudulently obtained judgment, together with interest and attorney's fees."[3] After answers were filed on behalf of the defendants, the defendants filed a motion to dismiss and a motion for sanctions. The plaintiffs filed a motion to remand. On July 18, 1986, the court dismissed plaintiffs' suit and imposed sanctions when the plaintiffs' counsel failed to appear for the hearing and for additional reasons set forth in the record. On August 5, 1986, plaintiffs filed a motion to set aside the court's order of July 18, 1986 on the ground that they had not received notice of the court's order setting oral argument. The court set plaintiffs' motion to reconsider for hearing on September 19, 1986 and also ordered the plaintiffs to show cause on the same date why sanctions should not be imposed under Rule 11. Plaintiffs' counsel, C. Jerome D'Aquila, then hired separate counsel who filed motions to set aside the sanctions imposed on him and also filed an opposition to the amount of sanctions sought by the defendants. The Roberts also filed an opposition in proper person to the court's order imposing sanctions and to the reasonableness of the amount. On August 16, 1986, D'Aquila withdrew as counsel of record for the Roberts. In signing the order to withdraw, the court reserved the right to impose sanctions on D'Aquila under Rule 11. On September 19, 1986, the court again dismissed plaintiffs' suit and found sanctions should be imposed on the plaintiffs and D'Aquila in an amount to be set by the court at a later date. The court also took under advisement: (1) whether the bankruptcy proceedings that the plaintiffs were engaged in precluded the court from imposing Rule 11 sanctions, and, (2) whether the sanctions should also include an injunction prohibiting the plaintiffs from filing another suit contesting the judgment entered in the Gulf Oil Corp. suit.

(2) *Gulf Oil Corp. v. J.C. Roberts Oil, et al*, CA 83–848

Gulf Oil Corporation filed its suit on August 5, 1983, to recover the sum of $501,-741.59 for gasoline, petroleum and related products sold to J.C. Roberts Oil Company, Inc. J.C. Roberts and his wife, Sylvia, were two of the defendants named in the suit. After a preliminary entry of default was entered, the Roberts filed an answer. Gulf then filed a motion for summary judgment. On November 22, 1983, the court granted Gulf's motion for summary judgment. The Roberts, who failed to file any opposition to the motion for summary judgment, filed a motion for relief from judgment. The court denied this motion on December 6, 1983. A second motion for relief of judgment was denied on January 18, 1984. The court entered a final judg-

---

**1.** Chevron U.S.A., Inc. has merged with Gulf Oil Corp. since the court's decision in CA 83–848 was rendered.

**2.** See par. 12 of the original petition.

**3.** *Id.,* par. 14(c).

ment on January 27, 1984. On February 28, 1984, the Fifth Circuit Court of Appeals dismissed the Roberts' appeal for failure to pay the filing fee for the appeal. Roberts had also filed a motion for a new trial which the court denied on March 8, 1984. On March 14, 1984, the Roberts filed a motion for an automatic stay of judgment which the court denied for plaintiffs' failure to follow the Federal Rules of Civil Procedure. On March 14, 1984, a second notice of appeal was filed in the record. In mid-April of 1984, the Roberts fired their attorneys and retained new counsel. On April 14, 1984, the Roberts filed a motion with the Fifth Circuit Court of Appeals to dismiss the second appeal. The Roberts then filed another motion for relief of judgment with the district court. On May 21, 1984, that motion was denied. A third notice of appeal was filed with the Fifth Circuit on May 29, 1984. During the time following the court's entry of its judgment against the Roberts, Gulf attempted to collect the judgment from the Roberts. The Roberts obviously tried to prevent the plaintiff from collecting on the judgment and numerous motions to quash depositions were filed. The court allowed a company named F.E.G., Inc. to intervene in the suit. F.E.G., Inc. was represented by C. Jerome D'Aquila, the same attorney who filed the suit against Gulf, Chevron and their attorneys and who is the subject of this Rule 11 motion. F.E.G., Inc. alleged that it owned the property which Gulf had seized from the Roberts to satisfy the judgment that it had obtained. Gulf filed an answer and opposition to the injunction sought by F.E.G., Inc. On July 19, 1984, F.E.G., Inc. dismissed its motion for a preliminary injunction.

The Fifth Circuit Court of Appeals rendered its decision on the third appeal taken by the Roberts on November 29, 1984. The Fifth Circuit affirmed the decision of this court and issued a mandate on December 21, 1984. In its opinion, the Fifth Circuit noted that the Roberts had "failed to exercise due diligence to discover the alleged errors" that they had urged in the Rule 60 motion filed with the court. It must be noted that on this appeal the Roberts contended that the judgment should be set aside "in the interest of justice" because of the "gross neglect of their attorneys." The Fifth Circuit noted that the Roberts' "remedy, if any is warranted, is a malpractice action in state court." In affirming the court's decision the Fifth Circuit stated that it could "not find even a 'slight' abuse of discretion in the district court's failure to grant the motion." After the appellate court affirmed the judgment against the Roberts, Gulf again attempted to collect the judgment.

Gulf filed petitions for garnishment under a writ of fieri facias against several parties, including Intracoastal Oil Co. of New Roads, J.C. Roberts Oil Co., Inc., and Circle R Convenience Stores, Inc. Gulf also seized under a writ of fieri facias certain shares of stock the Roberts had in the above companies. Thereafter, Gulf noticed the depositions of the Roberts for February 18, 1985. When the Roberts failed to appear for the depositions, Gulf filed a motion for sanctions for failure to appear at deposition and for attorney's fees and costs. Shortly thereafter Sam J. D'Amico withdrew as counsel for the Roberts. On March 1, 1985, the motion for sanctions was withdrawn. Gulf filed additional garnishment petitions and propounded interrogatories to the Roberts.

On September 24, 1985, Gulf filed a motion for leave to file a supplemental complaint and to join additional defendants in aid of execution. F.E. & G., Inc., Mescal B. Brown and Thomas A. Brown were added as additional parties defendant. The Roberts then filed an opposition to the amended complaint as well as a "Motion to Remand Under Rule 7(b)." The Roberts also filed a motion to impose sanctions. On November 1, 1985, the court heard arguments on defendants' motion to remand and to impose sanctions and on Gulf's motion to strike defendants' motion to remand. Neither the Roberts nor their counsel appeared at the hearing. The court denied the Roberts' motions to remand and for sanctions. This motion to remand was absolutely and totally frivolous since no suit had been removed from state court.

In essence, the defendant, who usually files a removal petition, filed a motion to remand a suit which had originally been filed in federal court. The court found that sanctions should be imposed on the Roberts and their counsel, John H. Musser, and Greg R. Potvin under Rule 11. On November 25, 1985, the court signed an order imposing sanctions of $1,205.

Gulf continued its efforts to collect its judgment by taking additional depositions and filing additional garnishment petitions. The answers to garnishment interrogatories filed by F.E. & G., Inc., Mescal Brown were signed by C. Jerome D'Aquila, the attorney who filed CA 86–340. D'Aquila also filed an answer to the supplemental complaint on behalf of Mescal B. Brown and F.E. & G., Inc. Efforts to collect the judgment continued. It must also be noted that the $1,205.00 sanctions imposed on the Roberts and their attorney was paid by a check from the Trustee in Bankruptcy of J.C. Roberts Oil Company, Inc. Gulf has returned this check. The court does not know if the sanction has been paid as ordered by the court.

(3) *Sylvia Reed, wife of/and James C. Roberts, Jr. and J.C. Roberts Oil Company, Inc., a corporation v. Gulf Oil Corporation (now Jack Patrick Harris, Trustee for the Bankruptcy Estate of J.C. Roberts Oil Company, Inc. v. Gulf Oil Co. (CA 84–3241 E.D.La.)*

The Roberts and later the Trustee filed a suit in the Eastern District of Louisiana against Gulf Oil Corporation. After a trial with jury, the jury returned a verdict in favor of the defendants. Another suit involving the same allegations has been filed in state court by the Roberts. The court has included a brief reference to these suits to show the overall intent of the Roberts and their counsel to harass and otherwise prolong these proceedings against Gulf. The Fifth Circuit has recently affirmed the dismissal of these suits in an unpublished opinion rendered on July 28, 1987.

## II. The Rule 11 Violation

 In several recent cases, the Fifth Circuit Court of Appeals has set forth the standard the court must apply in imposing Rule 11 sanctions. *Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir. 1987); *Thomas v. Capital Security Services, Inc.*, 812 F.2d 984 (5th Cir.1987); *News–Texan, Inc. v. The City of Garland, Texas*, 814 F.2d 216 (5th Cir.1987); *Doyle v. United States*, 817 F.2d 1235 (5th Cir.1987); *Curtis v. Bill Hanna Ford*, 822 F.2d 549 (5th Cir.1987). It would serve no useful purpose to summarize the jurisprudence which is set forth in the above cases. The fact that this case was originally filed in state court and thereafter removed to federal court does not mean that Rule 11 does not apply. Once a suit is removed from state court to federal court, the Federal Rules of Civil Procedure apply. It is also clear that attorneys have "a continuing obligation to review and reevaluate their position as the case develops." *Robinson*, 808 F.2d at 1127. Good faith on the part of the attorney and his client is no longer enough to protect them from Rule 11 sanctions. Counsel must make a reasonable inquiry into both the factual and legal basis of the suit before signing the pleadings. The fact that the pleadings initially satisfy the requirements of Rule 11 or that Rule 11 does not apply because the suit was filed in state court, does not satisfy the obligations of counsel and the parties under Rule 11. Upon discovery that "a good faith basis no longer exists, it is incumbent upon the appropriate counsel and party to take necessary actions to ensure that the proceedings do not continue without a reasonable basis in law and fact." *Robinson*, 808 F.2d at 1127.

Before imposing Rule 11 sanctions, the court must make findings of fact and conclusions of law on the following requirements of Rule 11:

(1) Whether the reasonable inquiry into the facts was made;

(2) Whether reasonable inquiry into the law was made;

(3) Whether the action was taken to harass, delay or increase unnecessarily the costs of litigation;

(4) Whether an attorney has met his continuing obligation to reevaluate his litigation position.

*Thomas,* 812 F.2d at 989.

The court has previously set forth a history of the litigation between these parties. It is clear that had the Roberts and their counsel made a reasonable inquiry as required by Rule 11, they would have and should have concluded that this suit was totally frivolous and without merit. Each should have discovered that the judgment rendered by this court in Civil Action 83–848 and affirmed by the Fifth Circuit Court of Appeals, after three separate appeals were taken to that court, was a final judgment and that res judicata applied to bar this action.

Federal law determines the res judicata effect of a prior federal court judgment. A review of the allegations and judgment rendered in Civil Action 83–848 and the allegations and prayer for relief in this litigation clearly shows that the judgment rendered in Civil Action 83–848 bars the Roberts from relitigating the issues in this litigation. It would not have taken much inquiry to discover this fact. However, when the court reviews the testimony of the Roberts, which was presented at the hearing that the court held to determine whether Rule 11 sanctions should be imposed, it is obvious to the court that the Roberts filed this second suit for the sole purpose to delay, harass and otherwise prevent Gulf from recovering on a valid judgment it obtained against the Roberts. The Roberts have clearly and unnecessarily increased the costs of this litigation. The futile and numerous attempts Gulf has made to collect its judgment, as was summarized earlier, have only been met by one delay after another on the part of the Roberts. The facts of this case reflect that the Roberts have no intention of paying this judgment. They are simply using the court and abusing the judicial system to avoid payment.

Finally, the court must conclude that D'Aquila and the Roberts have failed to meet their continuing obligation to reevaluate their litigation position. It is no defense to say that this suit was filed in state court. The attempt to have a state court reverse or change an otherwise valid federal court judgment is an abuse of the judicial system. However, once the suit was removed, the Roberts and their counsel should have reevaluated their position. Their failure to do so, as well as the vindictiveness and lack of respect that the Roberts have shown for the federal judicial process, constitutes a conscious and intentional violation of Rule 11. It is also clear that D'Aquila knew many of the background facts involving the litigation between the parties. He served as counsel of record for certain of the defendants in Civil Action 83–848 and was directly involved in the proceedings Gulf filed in its attempt to collect its judgment. D'Aquila also represents the Roberts in another suit wherein they attempted to stop a sheriff's sale of property. It is no defense for D'Aquila to say that his clients wanted to pursue this matter or that he was only trying to carry out the wishes of his client. D'Aquila signed the pleadings in this case and thus, is personally responsible with his clients for any Rule 11 violation. As counsel for the Roberts, D'Aquila was under a continuing obligation to review and reevaluate his case. This, he failed to do despite having a clear opportunity to do so from the time the suit was removed until the court dismissed this action. Once D'Aquila learned that his asserted position was no longer justifiable, he should have taken action to dismiss the case. In *Thomas, supra,* the Fifth Circuit reviewed the obligation and duty that a lawyer has to review his case and concluded:

But the duty may entail more than merely avoiding affirmative prosecution of a now baseless claim for in *Robinson* we noted that depending upon the facts a party may be required to withdraw or dismiss a document.

*Thomas,* 812 F.2d at 989.

This court cannot understand why the second suit was ever filed unless it was to delay Gulf from collecting its judgment, or to harass and unnecessarily require Gulf to spend more money litigating this matter. Whatever the original intent was, D'Aquila and Roberts should have immediately dis-

missed this suit once it was removed to federal court.

Therefore, the court finds that the Roberts and D'Aquila have violated the provisions of Rule 11. Once the court finds Rule 11 has been violated, the "district court can no longer selectively impose sanctions." *Thomas*, 812 F.2d at 989. In other words, the district court cannot overlook or minimize violations of the Rule once the court finds that Rule 11 was violated.

### III. Violation of 28 U.S.C. § 1927

▆ The court further finds, for reasons previously set forth, that the plaintiffs and the plaintiffs' counsel have violated the provisions of 28 U.S.C. § 1927.[4] It is clear that "federal courts possess inherent power to assess attorney's fees and litigation costs when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *F.D. Rich Co. v. United States ex rel. Industrial Lumber*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed. 2d 703 (1974). See, also: *Batson v. Neal Spelce Associates, Inc.*, 805 F.2d 546 (5th Cir.1986); *Southern Leasing Partners Ltd. v. McMullan*, 801 F.2d 783 (5th Cir. 1986). The essential element in triggering the award of fees is the existence of bad faith on the part of the unsuccessful litigant. *Hall v. Cole*, 412 U.S. 1, 6, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). In *Batson v. Neal, supra*, the Fifth Circuit further stated:

> The standards for bad faith are necessarily stringent. *See Roadway Express Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) ("Because inherent powers [to levy attorneys' fees for bad faith] are shielded from direct democratic controls, they must be exercised with restraint and discretion."). A party should not be penalized for maintaining an aggressive litigation posture. "But advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly

warrants recompense for the extra outlays attributable thereto." *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 181 (D.C.Cir.1980).

When the request for fees is made by a successful defendant, the bad faith, vexation, wantonness, or oppression often relates to filing and maintaining the action. 6 J. Moore, W. Taggert, and J. Wicker, Moore's Federal Practice 54.-78[3] (1986). Courts may also award fees, however, as a sanction for bad faith in the conduct of the litigation resulting in an abuse of judicial process. Thus, while the presence of merit in a claim or defense may negate any finding of bad faith in its filing, it cannot justify abuse of the judicial process in the method of prosecution. *See Lipsig*, 663 F.2d at 182.

The conduct of the plaintiffs and their counsel was clearly designed to burden the defendants with unnecessary expenditures and was an abuse of the judicial process. Plaintiffs and their counsel have acted in bad faith and should be held accountable for their conduct. A violation of 28 U.S.C. § 1927 is established beyond a reasonable doubt under the facts of this case.

### IV. Sanctions

▆ The court requested the defendants to submit a summary of the legal fees incurred in defending Civil Action 86–340. The Roberts and D'Aquila have had an opportunity to oppose the amount of the fees sought. In determining the monetary sanctions, the court must not only determine the amount of the sanction, but also the amount that the Roberts and D'Aquila should each pay. D'Aquila withdrew from representing the Roberts at the Rule 11 hearing and retained separate counsel to defend himself. The court finds that while D'Aquila violated Rule 11, his culpability was not as great as the Roberts. Thus, the court will require the Roberts and D'Aquila

---

4. 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and

vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

588

to pay different amounts insofar as the monetary sanctions are concerned.

Maureen N. Harbourt, Gary A. Bezet and G. William Jarman retained the law firms of Gary, Field, Landry and Dornier and Kantrow, Spaht, Weaver and Blitzer to represent them. The total fee of these two firms together with a fee of $1,565.00 incurred by the firm of Kean, Miller, Hawthorne and D'Armond comes to $23,576.49. Chevron has retained the firm of Montgomery, Barnet and has used in-house counsel. The total fee incurred by Chevron is $27,-602.33. The court has reviewed the data supporting the attorney's fees and finds that the fees are reasonable and proper under the facts of this case. Therefore, the monetary sanctions to be imposed in this case shall be the sum of $51,178.82. James C. Roberts, Jr. and Sylvia Roberts shall pay the sum of $46,178.82. C. Jerome D'Aquila shall pay the sum of $5,000.00 in sanctions.

■ The court further finds that a permanent injunction shall issue against the plaintiffs, James C. Roberts, Jr. and Sylvia Roberts enjoining them, their successors, assigns or anyone else deriving or who might hereafter derive any rights from or through them, or anyone acting in concert with them, from using, filing, maintaining, or prosecuting any claim or cause of action which arises out of or relates to the indebtedness which has been found to be due by this court in *Gulf Oil Corp. v. J.C. Roberts Oil Co.*, CA 83–848, aff'd 750 F.2d 67 (5th Cir.1984).

### V. Effect of the Bankruptcy Proceeding

■ The court finds that the bankruptcy proceeding involving the Roberts and their companies does not prevent the court from imposing the sanctions set forth herein.

Counsel for defendants shall prepare a judgment in accordance with this opinion, which shall be filed with the court within ten days.